IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                        Case No. 6:15-CR-10125-JTM

LUIS MENDOZA-ORTIZ,

        Defendant.

**MEMORANDUM AND ORDER**

The government seeks review of the decision of the United States Magistrate Judge authorizing the pretrial release of defendant Luis Mendoza-Ortiz, who is charged with two counts each of document fraud (18 U.S.C. § 1546(a)), making a false statement to the United States government (18 U.S.C. § 1001(a)(3)), misuse of a social security number (42 U.S.C. § 408(a)(7)(B)), and aggravated identity theft (18 U.S.C. § 1028A(a)(1)). Dkt. 1. Defendant is a previously-deported alien, has no legal status in the United States, and no authorization to work in the United States. He is subject to a detainer lodged by Immigration and Customs Enforcement ("ICE").

### I.    Legal Standard

The government may seek review of a magistrate judge's order of release. *See* 18 U.S.C. § 3145(a)(1). The district court reviews an order of release *de novo*. *See United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003). In conducting this review, the court grants no

deference to the magistrate judge's findings. *See United States v. Lutz*, 207 F. Supp. 2d 1247, 1251 (D. Kan. 2002).

Generally, a defendant should be released prior to trial unless there are no conditions which "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). In making this determination, the court must take into account the available information concerning the following:

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) The weight of the evidence against the person;
>
> (3) The history and characteristics of the person, including –
>
>   A. The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
>   B. Whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The government has the burden to show that no condition or combination of conditions would reasonably assure the accused's presence in later proceedings and/or the safety of other persons in the community. *Lutz*, 207 F. Supp. 2d at 1251.

## II.   Discussion

### A.   ICE Detainer

The issue of a defendant's release pending trial while subject to an ICE detainer is not new or unique to this court. Indeed, even a cursory search reveals case law from dozens of other districts, as well as several circuits, which attempts to resolve this very question. The dilemma is as follows: Congress "has mandated the *prompt* removal of illegally-reentering aliens under 8 U.S.C. §[§] 1231 and 1228." *United States v. Pena-Cano*, 2015 U.S. Dist. LEXIS 78297, at *2 (D. Kan. June 17, 2015) (internal quotations and citations omitted) (emphasis added). Indeed, ICE "has *no* statutory authority to hold aliens in [its] custody unless [it is] attempting to effect their departure as required by . . . 8 U.S.C. § 1231." *Id*. at *3 (emphasis added). This means, at least simplistically, that if a criminal defendant who also happens to have the status of "alien" is released on bond, ICE can immediately detain and deport that defendant *regardless* of the pending criminal charges, thereby frustrating, if not completely disregarding, the judicial process.

Presented in this manner, these competing interests leave district courts with a Sophie's choice, of sorts. Either allow pretrial release and take the chance that a defendant will be deported prior to the time of trial and/or a plea, or deny pretrial release based on the ICE detainer, effectively making pretrial detention automatic in every case involving deportation issues. Neither option is particularly attractive.

Here, defendant would have this court believe that the choice need not be made by the courts; rather, defendant argues that issues of immigration are irrelevant to consideration of pretrial release because the *government* must make a choice at the moment an indictment is filed against any defendant with immigration issues. Either the government must choose to

immediately deport the defendant (which, admittedly may be punishment in and of itself), or forego deportation in favor of criminal prosecution. Here, defendant asserts, the government has made its choice by choosing to pursue his prosecution and therefore cannot use risk of flight as a result of defendant's likely deportation as a cause to deny pretrial release. In other words, the government cannot benefit from an exigency that it itself created.

To date, the only controlling precedent in these types of cases is that a defendant's "immigration status and [a] pending ICE detainer are not adequate grounds, *standing alone*, to justify pretrial detention." *United States v. Sanchez-Martinez*, 2013 U.S. Dist. LEXIS 98086, at *5 (D. Colo. July 11, 2013) (citing *United States v. Salas-Urenas*, 430 Fed. Appx. 721, 723 (10th Cir. 2011) (declining to find that pre-trial detention is proper based solely on a defendant's immigration status or an ICE detainer)). *Cf. United States v. Morales*, 2012 U.S. Dist. LEXIS 23234, at *6 (D. Kan. Feb. 24, 2012) (observing that "the existence of an ICE detainer is not in and of itself sufficient grounds to find that a defendant poses a flight risk"); *United States v. Montoya-Vasquez*, 2009 U.S. Dist. LEXIS 2148, at *14 (D. Neb. Jan. 13, 2009) ("If Congress wanted to bar aliens with immigration detainers from eligibility for release, it could readily have said so, but did not."). Rather, "[a] defendant's immigration status and the existence of an ICE detainer are relevant to the detention decision as part of the history and characteristics of the defendant." *Salas-Urenas*, 430 Fed. Appx. at 723. Unfortunately for defendant, his additional history and characteristics weigh against pretrial release.

**B.     Application of the Factors**

    **1.     Nature and Circumstances of the Offense**

Defendant is charged with two counts each of document fraud (18 U.S.C. § 1546(a)), making a false statement to the United States government (18 U.S.C. § 1001(a)(3)), misuse of a

social security number (42 U.S.C. § 408(a)(7)(B)), and aggravated identity theft (18 U.S.C. § 1028A(a)(1)).  None of these charges involve the use of violence or weapons.  Accordingly, this factor weighs in favor of pretrial release.

### 2. Weight of the Evidence

The government did not present any evidence at the hearing that the court considers so overwhelming that it *must* weigh in favor of detention.  However, the indictment itself constitutes probable cause to believe that the offenses charged have been committed and that defendant has committed them.  This factor therefore weighs in favor of detention.

### 3. History and Characteristics of Defendant

Defendant is a 30-year old male citizen of Guatemala.  He first came to the United States in 2002, and stayed until 2006.  Most recently, defendant has been in this country since 2014.  However, from 2006 through 2013, defendant lived in Guatemala after having been deported following a conviction for fraud in connection with an immigration document in the Northern District of Texas.  Until the time of his arrest, defendant was living with a roommate in Coffeyville, Kansas.  Defendant has a girlfriend, Rachel Briggs, whom he has been dating for approximately nine months, and who is pregnant with defendant's child.  However, there is evidence that defendant is married and his wife resides in Guatemala.  The couple has been separated since defendant's return to the United States in 2014.  Defendant has three siblings, only one of whom lives in the United States.  The majority of defendant's family, including his parents, resides in Guatemala.

As noted above, defendant was previously convicted for fraud in connection with an immigration document in the Northern District of Texas in 2007.  Defendant served a 6-month prison term and was also sentenced to three years of supervised release.  After serving his

sentence, defendant was deported to Guatemala. Because of defendant's illegal status, he is not eligible for employment in the United States. Ms. Briggs assured the Magistrate that, if released, defendant could live in her home. She also agreed to co-sign defendant's bond. However, as of the date of the hearing, which was approximately six days after the detention hearing, defendant had yet to make bond.

Of utmost concern to this court is defendant's apparent ability to assume the identities of persons lawfully in the United States. When initially filed, the caption of this case was *United States v. First Name Unknown, Last Name Unknown*. This was also the case at the time of the detention hearing. On the date of the hearing before this court, defendant was identified as Luis Mendoza-Ortiz; however, the government indicated to the court that it was not certain that this was in fact defendant's true identity. Furthermore, defendant was previously convicted and sentenced in the Northern District of Texas under a completely separate identity, Marcelo Gamas-Lopez. Defendant has also been identified as other various versions of this name, as well as Eliezer Martinez-Torres. Even more incredible is that, prior to his arrest, defendant's girlfriend knew him as "Christian."

The court therefore finds that, absent the pending arrival of his child with Ms. Briggs, defendant has very little incentive to remain in this country to face prosecution. He cannot work, he cannot drive, and the majority of his family, including his wife, resides in Guatemala. Furthermore, defendant has demonstrated that he is rather adept at avoiding detection by assuming the identities of lawful citizens. These factors therefore weigh heavily in favor of detention.

### 4. Danger to the Community

The court is not aware of any additional criminal history, other than that previously noted. However, because the government has not yet been able to verify defendant's identity with absolutely certainty, the possibility remains that defendant has additional criminal history. Giving defendant the benefit of the doubt, nothing in his criminal history suggests any violence, use of weapons, illegal drug use, or anything suggesting that defendant is a danger to the community or others. This factor therefore weighs in favor of release.

### C. Conclusion

The court has considered the written and oral arguments of counsel, the Bond and Conditions of Release, the Pretrial Services Report, and the Magistrate Judge's Order. For the reasons enumerated above, the court finds, by a preponderance of the evidence, that no condition or combination of conditions will reasonably assure defendant's presence at trial in accordance with 18 U.S.C. § 3142(f). As such, the court finds that defendant should be detained pending further proceedings. The government's Motion to Revoke Order of Release (Dkt. 7) is therefore GRANTED.[1]

---

[1] The court pauses here to note defendant's argument that the facts in this case are similar to those in *United States v. Clemente-Rojo*, 2014 U.S. Dist. LEXIS 49614 (D. Kan. Apr. 10, 2014). In that case, the defendant, a citizen of Mexico, had been previously deported in 1998. In late 2013, the defendant applied for a driver's license in Liberal, Kansas, using an old driver's license and social security card for identification. The social security number listed on the card was not assigned to the defendant. In a later interview with the Kansas Department of Revenue, the defendant admitted that she purchased the card for $200. The defendant was subsequently arrested and charged with illegal reentry, a violation of 8 U.S.C. § 1326(a). A grand jury later returned a 15-count indictment charging the defendant with illegal reentry, false statements to the government, misuse of a social security number, and aggravated identity theft. At a detention hearing, the Magistrate denied the government's request for detention. On appeal, the district court affirmed.

Although procedurally similar, the facts of the *Clemente-Rojo* case differ significantly from the facts at hand. In *Clemente-Rojo*, the defendant had lived in Garden City, Kansas, for 22 years. Her siblings, parents, and children all resided in Garden City. She had a 7-year-old child that attended school in Garden City and the defendant was also active in the school. Multiple community members submitted letters on the defendant's behalf exhibiting her involvement in the community.

Here, as noted above, defendant has only resided in this country for a total of five and a half years, most recently residing here since 2014. Between 2006 and 2013, defendant resided in Guatemala after having been deported.

**IT IS ACCORDINGLY ORDERED** this 20th day of October, 2015, that defendant is hereby remanded to the custody of the United States Marshal.

s/J. Thomas Marten<br>
J. Thomas Marten, Judge

---

Furthermore, the majority of defendant's family, including his wife, resides in Guatemala. In fact, the *only* tie that defendant has to the United States is Ms. Briggs and his unborn child.